UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:16-cv-20245-UU

THOMAS E. PEREZ
Secretary of Labor,
United States Department of Labor

    Plaintiff,

v.

COMMODITY CONTROL CORP., *et al.*,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' Motions to Dismiss, D.E. 25. The Motion is fully briefed and ripe for disposition.

THE COURT has reviewed the pertinent portions of the record and is otherwise fully advised in the premises.

## BACKGROUND

The following allegations are taken from Plaintiff's Complaint. D.E. 1.

This action stems from the sale of shares by Defendants, David J. Pilger and William M. Pilger, who are the former owners of Commodity Control Corporation (the "Company"), to their employees through the Commodity Control Employee Stock Ownership Plan ("ESOP"), which is an employee pension benefit plan as defined under ERISA. 29 U.S.C. § 1002(2); D.E. 1 ¶¶ 9-10. The Company is a wholesaler and exporter of dry cleaning chemicals and supplies, which is headquartered in Miami, Florida. *Id.* ¶ 9. Defendants David Pilger and William Pilger were equal co-owners of the Company until they sold their shares to the ESOP in 2009. *Id.* ¶ 11. David Pilger is the Chairman and Director of the Company. *Id.* William Pilger was the Vice

Chair and Director of the Company. *Id.* Both David and William Pilger are named as Trustees to the ESOP and, as Trustees, are responsible for the management and maintenance of the ESOP assets and are required to value such assets at fair market value. *Id.* David Pilger has served as a Trustee since the ESOP's inception on January 1, 2008, and William Pilger served as a Trustee from the ESOP's inception until his death. *Id.* Because William Pilger is deceased, Plaintiff brings this action against his estate. *Id.* ¶ 13.

In or about September 2008, David and William Pilger began exploring means to divest themselves of their ownership stake in the Company and, as part of this effort, explored the possibility of selling the Company to its employees using an ESOP. *Id.* ¶ 14. On September 26, 2008, David Pilger hired RSM McGladrey Inc. ("McGladrey"), an independent consulting firm, to perform an appraisal of the fair market value of a 100% interest in the Company for purposes of establishing an ESOP. *Id.* ¶ 15. McGladrey issued its appraisal report, prepared by Tracy A. Lamb, ASA, on December 10, 2008 (the "Appraisal Report"). *Id.* The Appraisal Report concluded that, as of June 30, 2008, the fair market value of 100% of the Company Stock was approximately $9,677,000, before adjustment for lack of marketability. *Id.* After applying a median 5% marketability discount, the Appraisal Report concluded that the value of a 100% interest in the Company Stock, as of June 30, 2008 was $9,193,000, or $22.75 per share, on a control, non-marketable basis. *Id.*

On December 30, 2008, the Company established the ESOP, which was to become effective as of January 1, 2008. *Id.* at ¶¶ 9. The Company is named in the ESOP's Plan Documents as the Employer, Plan Sponsor and Plan Administrator to the ESOP. *Id.* The Company performed its Plan Administrator functions with respect to the ESOP through its Board

of Directors, which acted as functional fiduciaries to the ESOP.  *Id.*  At all times relevant to this action, David Pilger and William Pilger served on the Board of Directors.  *Id.*

On January 22, 2009, Defendants caused the ESOP to purchase 22,000 shares of the Company's common stock from David and William Pilger, at the cost of $22.75 per share, which amounted to a total sum of $500,500.  *Id.* ¶ 16.  This purchase price was based on the McGladrey Appraisal Report.  *Id.*  On February 22, 2009, Defendants caused the ESOP to enter into a second Stock Purchase Agreement and Pledge Agreement, which was once again based on the valuation in the Appraisal Report.  *Id.*  In the Second Stock Purchase Agreement, the ESOP purchased from David and William Pilger the remaining balance of 100% of the issued and outstanding shares of the Company.  *Id.* ¶ 17.  This amounted to 378,000 shares of the Company's common stock, which were purchased at the cost of $22.75 per share, for a total amount of $8,599,500.  *Id.*

At the time of the second Stock Purchase Agreement, the ESOP made a cash payment on closing in the amount of $15,783, which was derived from funds in the ESOP Trust.  *Id.*  The remainder of the Stock Purchase was financed by promissory notes from the ESOP to the Trustees/Defendants totaling $8,583,717 (the "Promissory Notes").  *Id.*  The Promissory Notes are collateralized by the unallocated shares of Company Stock and require the ESOP to make monthly payments of principal and interest over a ten (10) year term, with any unpaid balance due at the end of such period.  *Id.*

On December 7, 2009, nearly ten months after the second Stock Purchase, Ms. Lamb provided a one-page letter to the Trustees, opining that "no alteration of value [from the previous valuation of $22.75 per share as of June 30, 2008] was warranted as of February 18, 2009" (the "Fairness Opinion").  *Id.* ¶ 20.  In the Fairness Opinion, Ms. Lamb claims to have considered "all

3

relevant factors" and to have "discussed with management the changes in financial performance and position between the June 30, 2008 valuation date and February 18, 2009, as well as management's outlook." *Id.* Ms. Lamb claims to have found "no material changes in financial performance or position . . . which would result in a lower value for ESOP transaction purposes." *Id.*

Over the next several years, the Company made contributions to the ESOP in excess of $2.8 million, which the ESOP has used to pay interest on the Promissory Notes and to release shares, which were allocated to all eligible Participant Accounts. *Id.* ¶ 21. As of December 31, 2014, the ESOP had an outstanding loan balance of $7,302,526 and 62 participants. *Id.*

Plaintiff alleges that Defendants, as fiduciaries and Trustees to the ESOP, breached their duty to the ESOP by providing inaccurate and incomplete information to McGladrey, as well as failing to completely read and understand the Appraisal Report, which resulted in Defendants, David and William Pilger, being paid an inflated sum for their shares of the Company. *Id.* ¶¶ 22-24, 30. Plaintiff alleges that the valuations contained numerous flaws, including, but not limited to: (a) improper inclusion of 2008 cash flow in the computation of present value of future net cash flows; (b) failure to update the valuation to consider the issuance of common stock warrants to shareholders on February 18, 2009; (c) overly aggressive cash flow projections; (d) low weighted average cost of capital rate; (e) high long term growth rate; (f) low capitalization rate; (g) improper adjustment to earnings; and (h) failure to update valuation as of the dates of stock purchases. *Id.* ¶ 25. The ESOP significantly overpaid David William Pilger for the Company's stock because Defendants failed to recognize these flaws which, to some degree, were caused by Defendants' failure to provide McGladrey with complete and accurate information. *Id.* ¶¶ 28, 30.

4

Based on these underlying allegations, Plaintiff brings three Counts, which are each alleged against all Defendants. Count I alleges a claim for breach of fiduciary duty under 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D). Counts II alleges claims for engaging in non-exempt prohibited transactions in violation of 29 U.S.C. §§ 1106(a)(1)(A), (B) and (D). Count III alleges a claim for engaging in prohibited transactions in violation of 29 U.S.C. §§ 1106(b)(1) and (b)(2).

On April 1, 2016, Defendants moved to dismiss Plaintiff's Complaint, in its entirety, under Federal Rule of Civil Procedure 12(b)(6). D.E. 25.

## LEGAL STANDARD

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent

5

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* at 679.

## DISCUSSION

### I.   Time Limitations Under ERISA

Defendants argue that Plaintiff's ERISA claims are barred by the six-year statute of repose set forth in 29 U.S.C. §§ 1113(1). Time limits for filing an ERISA action are as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> **(1)** six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> **(2)** three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Defendants argue that this statutory language creates a statute of repose in subparagraph (1), a statute of limitations in subparagraph (2), and a statutory exception to the statute of repose in the event of fraudulent concealment. "There is a distinct difference between statutes of limitations and statutes of repose." *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1217-18 (11th Cir. 2001). Whereas a "statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues," a statute of repose "limits the time within which an action may be brought and is not related to the accrual of any cause of action." *Id.* at 1218. The difference between a statute of limitations and statute

6

of repose hinges on when the limitation begins to run.  With a statute of limitations, the "time period begins to run when the cause of action arises and not necessarily on the date of the relevant act or omission."  *Id.*  With a statute of repose, the "time period does not begin to run when the action accrues, but rather when the relevant action occurs."  *Id.*  For this reason, equitable tolling principles do not apply to statutes of repose.  *See, e.g.*, *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 978 n. 5 (11th Cir. 2007).

Here, Defendants argue that 29 U.S.C. §§ 1113(1) creates six-year statute of repose that cannot be tolled.  Defendants argue that because Plaintiff filed the Complaint on January 20, 2016, he cannot recover based on any allegedly wrongful acts occurring before January 20, 2010.  Accordingly, Plaintiff's claims, which are based on conduct occurring, at the latest, on December 7, 2009, must be dismissed.

In response, Plaintiff refers to a tolling agreement "knowingly and voluntarily" entered into by Plaintiff and Defendants before the expiration of ERISA's limitations period, which purported to waive any defense based on ERISA's limitations period and extend the limitations period for approximately one year.  D.E. 28 p. 2; *see also* D.E. 25.  Plaintiff further argues that because Defendants themselves admit to signing the tolling agreement in their Motion to Dismiss, Defendants cannot now turn around and argue that the time limitations under ERISA bar Plaintiff's claims.  D.E. 28 p. 2 (citing D.E. 25 p. 8).  Moreover, Plaintiff argues that because the time limitations in ERISA constitute a non-jurisdictional statute of limitations, the six-year period could be, and in fact was, waived.  D.E. 28 pp. 2-15.

There is no binding precedent within this Circuit addressing whether the time limitation in § 1113(1) is a statute of limitations or a statute of repose.  However, the Court need not make this determination to resolve Defendants' Motion. Statutes of limitation are clearly waivable.

7

*See, e.g.*, *United States v. Terry*, 619 F. App'x 887, 889 (11th Cir. 2015); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 699 (11th Cir. 2005) ("Therefore, § 546 is indeed a statute of limitations, subject to waiver, equitable tolling, and equitable estoppel."). Moreover, while the Eleventh Circuit has yet to squarely address the issue, courts in other circuits have held that parties can modify, extend, or waive a statute of repose based on a written agreement between the parties. *See J.E. Liss & Co. v. Levin*, 201 F.3d 848, 850 (7th Cir. 2000) *abrogated on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 (2002) ("A statute of repose and a statute of limitations are ordinary defenses to liability, differing from each other only in length, accrual, and tolling rules . . . Both normally are waivable."); *ESI Montgomery Cnty., Inc. v. Montenay Int'l Corp.,* 899 F.Supp. 1061, 1066 (S.D.N.Y. 1995) (upholding an express waiver of period of repose in a federal securities action); *First Interstate Bank of Denver v. Central Bank & Trust Co.,* 937 P.2d 855, 860 (Colo. App. 1997) (same); *see also Christie v. Hartley Const., Inc.*, 766 S.E.2d 283, 287 (N.C. 2014) (holding under North Carolina law that a construction statute of repose is subject to an express waiver by written agreement extending the statute for two years, in part because "we see no public policy reason why the beneficiary of a statute of repose cannot bargain away, or even waive, that benefit"). The Court agrees with these decisions. Accordingly, Plaintiff can bring an action against Defendants based on acts occurring beyond the six-year time period, to the extent that Plaintiff plausibly alleges that the parties reached an agreement to extend the time limitation set forth in Section 1113(1).

However, Plaintiff fails to plausibly allege the existence of such an agreement in his Complaint. A court is limited to the four corners of a complaint in ruling on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Here, Plaintiff fails to

plead any agreed-to modification of ERISA's time limitations in his Complaint and, moreover, does not attach the relevant agreement to the Complaint. *See* D.E. 1. The Court is, therefore, bound to conclude that Plaintiff fails to allege sufficient facts to show that he is entitled to recover beyond the six-year time period set forth in Section 1113. Because Plaintiff bases his ERISA claim on conduct occurring, at the latest, in December 2009, Plaintiff's Complaint is dismissed without prejudice based on ERISA's six-year time bar. 29 U.S.C. § 1113(1); D.E. 1 ¶ 20. Should Plaintiff seek to amend the Complaint, he must plead facts to plausibly show that Defendants agreed to extend or otherwise modify the six-year time bar under ERISA.

## II.     Shotgun-style Pleading

Defendants also argue that Plaintiff's Complaint should be dismissed because it is an improper shotgun-style pleading. In a shotgun pleading, "the complaint incorporates all of the general factual allegations by reference into each subsequent claim for relief." *Ferrell v. Durbin*, 311 F. App'x 253, 259 (11th Cir. 2009). "The Eleventh Circuit has had much to say about shotgun pleadings, none of which is favorable." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1337 (S.D. Fla. 2011) (internal quotations omitted) (collecting cases). Shotgun pleadings are uniformly condemned because such pleadings "impose a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n. 6 (11th Cir. 2006) (internal citations omitted).

Plaintiff's Complaint offends the relevant precedent only to the extent that Count II incorporates all of Count I's allegations, and Count III incorporates all of the allegations contained in Counts I and II. D.E. 1 ¶¶ 36, 42. Accordingly, when amending the Complaint, Plaintiff should take care to incorporate only the factual allegations pertinent to each Count.

### III.     Breach of Fiduciary Duty Under 29 U.S.C. § 1104(a)(1) (Count I)

Defendants also argue that Count I should be dismissed because: (1) Plaintiff cannot plead breach of fiduciary duty claims where Defendants relied on a reputable expert; and (2) Plaintiff fails to plead damages as a result of Defendants' alleged breach.  Under 29 U.S.C. § 1104(a)(1)(A), "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  Fiduciaries are also required to discharge their duties: (1) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;" and (2) "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."  29 U.S.C. § 1104(a)(1)(B)-(D).  "ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets."  *Herman v. NationsBank Trust Co., (Georgia)*, 126 F.3d 1354, 1361 (11th Cir. 1997) (internal citations omitted).  Nonetheless, courts are instructed to engage in "careful, context-sensitive scrutiny of a complaint's allegations" when deciding a motion to dismiss and, further, should not permit parties to proceed on breach of fiduciary duty claims under ERISA based solely on allegations that a fiduciary exercising reasonable diligence failed to discover over or undervaluation of stock.  *See Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470 (2014); *see also Smith v. Delta Air Lines Inc.*, 619 F. App'x 874, 876 (11th Cir. 2015) (allegations that a fiduciary should have recognized, from

publicly available information, that the market was over or undervaluing the stock of a publicly traded company insufficient to state an ERISA claim).

Defendants argue that Count I should be dismissed for failure to adequately plead breach of fiduciary duty for four reasons. First, Defendants argue that the Complaint fails to state a claim because Defendants relied on a qualified expert, thereby demonstrating that Defendants exercised the "skill of a prudent man acting in a like capacity." D.E. 25 p. 17 (citing 29 U.S.C. § 1104(a)(1)(B)). Second, Defendants argue that Plaintiff cannot hinge its Section 1104(a)(1) claim on underperformance of the Company's stock and, because it did so, Plaintiff fails to state a claim. *Id.* p. 16. Third, Defendants argue that Plaintiff cannot show damages for any alleged breach of fiduciary duty based on the Promissory Notes, as the provisions in the Promissory Notes are only triggered where the lenders exercise their option to accelerate the amounts due under these notes and the Complaint does not, and cannot, allege these conditions. *Id.* p. 15. Lastly, Defendants contend that because "the Complaint does not adequately allege that any of the Defendants breached their fiduciary duties, there can be no breach of duty by the co-fiduciaries or co-trustees" under 29 U.S.C. § 1105(a)(1)-(3). *Id.* p. 18.

In response, Plaintiff argues that the Complaint plausibly alleges breach of fiduciary duty claims under Section 1104(a)(1) because it alleges that: (1) David and William Pilger breached their fiduciaries duties by selling their own shares in the Company to the ESOP "for nearly twice as much as those shares were worth"; (2) Defendants failed to provide the appraiser, Ms. Lamb, with "complete and accurate information," thereby making Defendants' reliance on the Appraisal Report unreasonable under the circumstances; (3) Defendants failed to determine whether the ESOP funds were prudently invested, as required by the Plan Documents; and (4) Defendants

failed to ensure that the Promissory Notes conformed to the requirements of the Plan Documents, as required under 29 U.S.C. § 1104(a)(1)(D). D.E. 28 pp. 17-20.

Plaintiff argues that Defendants' actions have plausibly harmed the ESOP and its participants for two reasons. First, Plaintiff argues that these actions plausibly caused damage because Defendants' failure "to determine the prudence of the ESOP's investments as required by the ESOP's Plan Documents" resulted in the ESOP overpaying for Company stock. D.E. 28 p. 19 (internal quotations omitted). Second, Plaintiff argues that these actions plausibly caused harm based on Defendants' failure to "ensure that the Promissory Notes conformed" to the Plan Documents, as this failure caused ESOP participants to incur contingent liabilities for collection costs on those notes that, according to Plaintiff, entitles it to possible injunctive relief. *Id.* pp. 19-20.

The Court concludes that Plaintiff's Complaint adequately alleges breach of fiduciary duty claims under ERISA §§ 1104(a)(1)(A), (B) and (D), and that it is plausible that these breaches harmed the ESOP and its participants. As an initial matter, Plaintiff alleges that David and William Pilger, who were former owners of the Company, violated their fiduciary duties by selling their own shares in the Company to the ESOP "for nearly twice as much as those shares were worth" and, moreover, that they were able to do so because they did not provide the appraiser of these shares with complete and accurate information. D.E. 1 ¶¶ 5, 30. These allegations, standing alone, plausibly allege that David and William Pilger and, therefore, the Company, breached their fiduciary duty to act "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries and (ii) defraying reasonable expenses of administering the plan." *See* 29 U.S.C. § 1104(a)(1)(A).

With respect to 29 U.S.C. § 1104(a)(1)(B), Plaintiff alleges that Defendants, as fiduciaries and Trustees to the ESOP, "failed to completely read and understand the Appraisal Report issued by McGladrey." D.E. 1 ¶ 22. By failing to read and understand this report, Defendants allegedly failed to notice numerous flaws, including: (a) improper inclusion of 2008 cash flow in the computation of present value of future net cash flows; (b) failure to update the valuation to consider the issuance of common stock warrants to shareholders on February 18, 2009; (c) overly aggressive cash flow projections; (d) low weighted average cost of capital rate; (e) high long term growth rate; (f) low capitalization rate; (g) improper adjustment to earnings; and (h) failure to update valuation as of the dates of stock purchases. *Id.* ¶ 25. These allegations are once again enough to state a claim for breach of fiduciary duty under ERISA. While Defendants were entitled to rely on an appraisal, "independent expert advice is not a 'whitewash,'" and Defendants were therefore required to, at the very least, make an "honest, objective effort to read the valuation, understand it, and question the methods and assumptions that do not make sense." *See Howard v. Shay*, 100 F.3d 1484, 1489-90 (9th Cir. 1996); *see also Donovan v. Cunningham*, 716 F.2d 1455, 1474 (5th Cir. 1983) ("An independent appraisal is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled."). Because the Complaint alleges that Defendants failed to undertake reasonable efforts to understand and analyze the Appraisal Report, even after Defendants neglected to provide the appraiser of the Company's shares with complete and accurate information, Plaintiff states a claim against Defendants for breach of fiduciary duty under subsection (a)(1)(B) of ERISA. 29 U.S.C. § 1104(a)(1)(B) (requiring fiduciaries to act "with the care, skill, prudence and diligence under the circumstances . . . that a prudent man [would].").

Plaintiff also states a claim under 29 U.S.C. § 1104(a)(1)(D) because the Complaint, on its face, adequately alleges that Defendants failed to comply with the Plan Documents by causing the ESOP program to imprudently purchase Company stock at a price exceeding fair market value on two separate occasions, thereby harming the ESOP and its participants. D.E. 1 ¶¶ 28, 30. Moreover, after liberally construing Plaintiff's allegations, the Court concludes that contingent liabilities may entitle Plaintiff to relief based on damages caused as a result of these contingencies. *See id.*; *see also Doe By & Through Doe v. Pub. Health Trust of Dade Cty.*, 696 F.2d 901, 907 (11th Cir. 1983) (requiring that district courts "liberally construe the material allegations in favor of the plaintiff"). Because the Complaint adequately alleges that Defendants breached their fiduciary duties, Plaintiff also adequately alleges a claim for breach of fiduciary duty against co-fiduciaries and co-trustees under 29 U.S.C. § 1105(a)(1)-(3). Accordingly, it is

ORDERED AND ADJUDGED that Defendants' Motion, D.E. 25, is GRANTED IN PART and DENIED IN PART. Plaintiff's Complaint is dismissed without prejudice, in its entirety, for the reasons stated herein. The Motion is otherwise DENIED. Plaintiff has until **Wednesday, May 11, 2016,** to file an Amended Complaint if it wishes to do so.

DONE AND ORDERED in Chambers at Miami, Florida, this _3d_ day of May, 2016.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record